242 P.2d 1006

SMITH v. MEADOWS (GOMEZ, third-party defendant-appellee).

No. 5444.

Supreme Court of New Mexico.

April 7, 1952.

Simms, Modrall, Seymour & Simms, James E. Sperling, C. Vance Mauney, Albuquerque, for appellant.

Joseph L. Smith, Lorenzo A. Chavez and Dale B. Walker, Albuquerque, for appellee Smith.

T. B. Keleher, Albuquerque, for appellee Gomez.

COORS, Justice.

The plaintiff below, Smith, (an appellee here) was granted judgment in the sum of $12,500 against the defendant Meadows (appellant here) based upon a verdict of the jury in such amount on account of personal injuries, medical expenses, etc., suffered by defendant in a rear-end collision in the nighttime when the car owned and driven by the defendant, in which plaintiff was riding as a guest, collided with the car of third-party defendant (an appellee here) which was stopped at night on a portion of the traveled part of the public highway. The plaintiff did not sue the owner of the car which was parked or stopped on the public highway but the defendant, by permission of court, brought in such owner of

the parked car, Robert Gomez, as a third-party defendant, alleging that he had negligently parked his car upon the highway at night, without lights and in violation of law, and that such negligent acts of the third-party defendant were the proximate cause of the collision and whatever injuries were suffered by plaintiff; and prayed that, in event plaintiff recovered judgment against defendant, defendant should have judgment against third-party defendant in a like sum. The third-party defendant filed his answer of denial and a counterclaim charging defendant with negligence in driving into his car on the highway and damaging it to the extent of $385.12 and asking judgment against Meadows for such sum. The jury returned a verdict in favor of third-party defendant Gomez on his counterclaim against the defendant Meadows for the sum of $250, although instructed by the court that the parties had stipulated that any verdict, if given in favor of third-party defendant, should be in the sum of $385.12. Third-party defendant (appellee here) moved the court for judgment non obstante veredicto for $385.12. The court granted such motion and entered judgment for said third-party defendant Gomez against defendant Meadows in the last said sum.

There was no evidence introduced to show, nor was there any contention made by plaintiff, that the accident was intentional on the part of the defendant Meadows.

The material questions presented for determination in this case were, first, whether the accident in which the plaintiff was injured was caused by defendant's heedless or reckless disregard of the rights of others and, second, whether the actions of the third-party defendant in parking his car on the public highway at night was negligence and the proximate cause of the injury or a contributing proximate cause of the accident.

The cause of action filed by plaintiff as a guest against defendant, the owner and driver of the car in which plaintiff was riding, is not a cause of action for negligence but is one based upon what is known as the New Mexico guest statute, being Sec. 68-1001, N.M.S.A.1941, which reads as follows:

"No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator or caused by his heedlessness or his reckless disregard of the rights of others."

In order to recover, it is not enough for plaintiff, the guest, to prove that defendant was negligent and that his negligence was the proximate cause of the accident

and injury, but he is required to prove that the proximate cause of the accident and injury was defendant's heedless and reckless disregard of the rights of others. As against the third-party defendant Gomez the plaintiff would only have had to prove negligence of Gomez as the proximate cause of the injury, but the plaintiff did not sue Gomez. On the third-party defendant's counterclaim against the defendant Meadows for the damage to his car, the counterclaimant Gomez would have been required only to show that defendant Meadows' ordinary negligence was the proximate cause of his damage but, if the third-party defendant was guilty of contributory negligence by stopping his car upon the highway at night without lights he would not have been entitled to a verdict or judgment.

The third assignment of error made by appellant is:

"3. That the trial court erred in failing and refusing to grant defendant's motion duly made within the requisite period of time as prescribed by law, to set aside verdict of the jury and enter judgment notwithstanding the verdict."

When a verdict or judgment is attacked, as in the present case, it is our duty to determine whether there is substantial evidence, contradicted or uncontradicted, to support it, and all conflicts must be re-

solved in favor of the appellee and all reasonable inferences indulged in the support of the verdict and judgment. There is small conflict in the evidence on material questions, except on the speed at which the defendant was driving his car and on the question of how far over on the traveled portion of the highway the car of the third-party defendant was stopped. Bearing in mind the rule above stated, we review the evidence in the case.

Plaintiff and defendant were residents of Los Alamos, New Mexico, where defendant was employed as a bartender at the Civic Club in said city and the plaintiff was a metal worker and also played in the orchestra weekly on Saturday nights for dances at said Civic Club. They had been acquainted for about ten months and saw each other once or twice a week and on several occasions had gone out socially together. Prior to the day of the accident both had ridden with each other in each other's car and upon one occasion defendant had allowed plaintiff to drive defendant's car from Los Alamos to Espanola.

On May 28, 1950, the Civic Club gave a picnic at Bandelier National Monument, in a canyon about 14 miles from Los Alamos. The defendant took the plaintiff and two girls in his car from Los Alamos to the picnic about noon of that day. The Club furnished free lunch and beer to the guests of the picnic and both plaintiff and de-

fendant had lunch and drank beer at some time while they were there. Plaintiff had two or three beers and the defendant had several but not in excess of six. Plaintiff, defendant and the two girls left the picnic about 4:00 p. m. or thereafter, returning to Los Alamos, where the girls were taken home. Plaintiff and defendant went first to one dormitory and then to the other, where each lived, to change their clothes. At that time plaintiff took a drink of whiskey but defendant had no alcoholic drinks of any kind after he had left the picnic in the afternoon. During the afternoon plaintiff and defendant had talked of driving to Ragle's Airport south of Santa Fe to get a plane and fly to Denver, Colorado, or to Juarez, Mexico.

Plaintiff and defendant, in defendant's car with defendant driving, left Los Alamos and drove to Ragle's Airport, several miles south of Santa Fe, arriving there at about 6:00 in the evening. They went into the airport restaurant and ate sandwiches and drank coffee and then defendant left plaintiff in the restaurant and went out to the airfield. Upon inquiry he found that he could not rent a plane, that none was available at that time for rental purposes. He decided to take a flying lesson from the instructor, Mr. Erickson. The defendant had theretofore taken numerous lessons and had a private pilot's license. His flying lessons were taken under his G. I. rights and he was continuing his instruction for the pur-

pose of securing a commercial pilot's license. He made a flight under the supervision of said instructor for a period of half an hour. His instructor, who had given him many lessons previously, noticed no signs of intoxication and smelled no liquor upon the defendant; if he had, he would not have allowed him to take the lesson. After the flying lesson the defendant came back into the restaurant and joined the plaintiff, advising him that they were unable to get a plane for the trip they had contemplated and the defendant seemed to the plaintiff somewhat excited and more talkative than usual, talking about his flight that he had just made and about driving to Juarez.

They immediately decided to drive to Juarez and got into defendant's car. Plaintiff asked if he could drive and defendant said no, that he wanted to find another road to get over to Highway 85. On their trip south over Highway 85 defendant drove at a high speed. Plaintiff looked at the speedometer twice between the time they left the airport and the time of the collision two miles south of Bernalillo. At one time it registered between 60 and 65 miles an hour and the other time it registered 70 miles an hour. Plaintiff testified that although he did not look at the speedometer but twice, he felt at times that they were traveling faster than at the times he had glanced at the speedometer. During the 40 or 45 mile drive between the airport and the place of

the accident the defendant never drove the car off the pavement of the highway, but did pass three or four cars going in the same direction by pulling out to the left and going around them without sounding his horn. At one time plaintiff asked defendant if he was tired and defendant said "No".

The road was straight and had been for about one and one-half miles prior to the accident; there was no ice, snow or water on the road and the night was clear. The road was very familiar to defendant as he had lived in Albuquerque many years and had driven the road repeatedly between Albuquerque and Bernalillo. The plaintiff felt nervous because of the speed of the car, but he never complained to the defendant about the speed or about any other thing connected with the driving of the car. He made no complaints of any character whatsoever to the defendant; he did not ask him to slow down, he did not ask or threaten to get out, nor did he suggest anything to defendant with reference to his driving. The plaintiff, although not driving, constantly watched the road ahead. There suddenly appeared ahead on the road in front of them a car in the road. Plaintiff saw it only a second or two before the collision and when he saw it he knew there was going to be a crash. The defendant saw the parked car suddenly appear ahead and thought it was too close to apply brakes and that he would have to go around it to the left. His testimony as to how far he was away from it

when he first observed it varied greatly, he first stating it was 100 or 200 feet probably and later, on cross-examination, saying it might have been 300 feet or 30 or 40 feet. However, it came suddenly into the vision of both plaintiff and defendant and the collision occurred within a second or two or three after its observance by them, or either of them. The right front part of defendant's car struck the left rear end of the car of third-party defendant Gomez, which was parked one or one and one-half feet on the west side or right side of the pavement, without lights, flares or other illumination of any character. Both plaintiff and defendant were knocked unconscious at the time of the accident.

The highest speed of the car of defendant, as testified to by any witnesses was that given by Gomez, the third-party defendant, who was standing beside the road but 200 feet away from his car, and by his friend Gutierrez, who had been riding in the car with him. According to their testimony the defendant at the time of the collision was driving 70, 75 or 80 miles an hour, which is the speed we must accept in considering this case, although it was estimated by third-party defendant and his companion standing on the road at night under circumstances which would not have much probative force.

The third-party defendant Gomez had purposely stopped his car on the road because his engine was getting hot. Within a

second of the time he stopped it, his lights on the car flashed and went out and he later found that his battery was dead. He and his companion Gutierrez endeavored to start the car by pushing it some feet but it did not start. They then tried to get others cars that passed on the road to stop and give them a push and, at the time of the collision, the third-party defendant was 200 feet up the road endeavoring to get the driver of another car to turn around and come back and push his car. The third-party defendant Gomez admitted that he probably could have moved his car off the road right opposite to where he stopped it on the road, but the plaintiff, although knocked unconscious at the accident and although he testified he did not know the exact place where the collision occurred, also testified that at the place of the accident it was only 4 to 6 feet between the right-hand edge of the pavement on the highway to a fence, which was some evidence indicating that the space between the road and the fence at the right of the place of the accident was not wide enough to park the Gomez car. Gomez and Gutierrez immediately after the accident noticed a slight odor of liquor in defendant's car or on defendant but observed nothing indicating intoxication of either plaintiff or defendant.

Do these facts and the reasonable inferences therefrom contain any substantial evidence that defendant's acts showed a heedless and reckless disregard of the rights of others and particularly of the plaintiff and that such conduct of defendant was the proximate cause of the accident and plaintiff's injuries? A correct answer to this question requires a discussion and interpretation of the guest statute under which this action was filed and tried. We find practically no aid in referring to former decisions of this court. The only case passed upon by this court coming to our notice where a guest sued the owner and driver of a car for personal injuries suffered, since the passage of the New Mexico guest statute, is that of Stalcup v. Ruzic, 51 N.M. 377, 185 P.2d 298. In that case this court, without discussion of the guest statute or citation of any authorities construing and interpreting the meaning of such statute, recited the evidence and held there was substantial evidence to support the jury's finding that the guest's injuries were proximately caused by the acts of the owner of the automobile in operating his car in a heedless and reckless disregard of the rights of others.

The material facts in the case of Stalcup v. Ruzic and the present case are very different. About the only similar facts in the two cases were that the defendants in both cases were driving their cars at a very high rate of speed, in the former case at someplace between 65 and 90 miles per hour and in the present case between 70 and 80 miles an hour. Both drivers failed to turn their cars so as to avoid a collision with another

automotive vehicle and each collision, which resulted in injuries to the plaintiffs, occurred in the nighttime. But the material facts differed in these respects: in the Stalcup case the defendant was driving at such high speed inside the City of Clovis on one of its main streets handling a large amount of traffic, in a district which was semi-business and residential, while in the present case the accident occurred on a public highway in the country. In the Stalcup case the defendant driver collided with a city bus at a street intersection in the City of Clovis at a time when the bus was stopped approximately one foot over on the defendant's right-hand side of the street as the bus was about to make a turn into the intersecting street, and when the headlights of the bus were fully lighted facing defendant and could be seen for a long distance. In addition, the interior of the bus in which passengers were seated was likewise lighted. In the present case there was no intersection involved and the car with which defendant Meadows collided was standing on a portion of the right half of the traveled portion of the highway, without any lights of any kind whatsoever. While we do not desire to indicate that the ruling in the case of Stalcup v. Ruzic was not correct, based upon all the facts in that particular case, we are of the opinion that it was a border-line case and that we, as well as the trial courts, should carefully distinguish the difference between negligence of a driver and heedless and reckless disregard on the part of a driver for the rights and safety of others.

In enacting our guest statute, Sec. 68-1001, N.M.S.A.1941, supra, the legislature took away from a guest (as defined in said act) the common-law right of action, which previously existed in favor of such a guest, against the driver of a car on account of injuries suffered by the guest due to the negligence of the driver or owner. In fact, this statute announces a general rule that no person defined as a guest therein "shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident", and then it defines two exceptions to this general rule, such exceptions being (1) where such accident shall have been intentional on the part of the owner or operator and (2) where such accident is caused by the owner's or operator's heedless or reckless disregard of the rights of others. It is only the second exception to the general rule as a ground of liability with which we are interested in the present case. The said guest statute was enacted for the very purpose of preventing recovery by a guest of damages resulting from the negligence of a driver and allows recovery only in case the driver's acts were intentional or in heedless and reckless disregard of the rights of others.

Our statute, passed in 1935, was adopted verbatim from the statute of Con-

necticut which became effective July 1, 1927. (Public Acts 1927, Ch. 308, Sec. 1, recently repealed). Applying the general rule of law, the legislature of the State of New Mexico having adopted the Connecticut statute verbatim, is presumed to have adopted the prior construction and interpretation of such statute by the highest court of Connecticut. This presumption is strong and should be recognized unless it is overthrown by stronger reasons or evidence that prior construction was not adopted by New Mexico. We shall apply the general rule in this case as we see no reason or evidence that such construction by the courts of Connecticut was not adopted. This general rule has been frequently announced by this court in the following cases: White v. Montoya, 46 N.M. 241, 126 P.2d 471; McDonald v. Lambert, 43 N.M. 27, 85 P.2d 78, 120 A.L.R. 250; Palmer v. Town of Farmington, 25 N.M. 145, 179 P. 227; Dow v. Simpson, 17 N.M. 357, 132 P. 568; and Reymond v. Newcomb, 10 N.M. 151, 61 P. 205.

The first case coming before the Supreme Court of Errors of Connecticut after passage of the Connecticut guest statute was that of Silver v. Silver, 1928, 108 Conn. 371, 143 A. 240, 242, 65 A.L.R. 943. The Connecticut court said:

"If the phrase 'or caused by his heedlessness' is to be taken as strictly disjunctive as by itself constituting an exception to the general rule of nonliability, and 'heedlessness' is held to be synonymous with 'negligence,' the entire statute is nugatory and effects no change whatever in the law as it existed before its enactment. We do not think that is a sensible construction of the statute. It would utterly fail to effectuate the obvious purpose of the Legislature in some way to limit the liability of the owner or operator of a motor vehicle to one who was riding in it as his guest. The language of the statute indicates an intention to limit such liability to two classes of cases: First, when the accident was caused by intentional misconduct; and, second, when it was caused by heedless or reckless disregard of the rights of others, meaning thereby something more than the mere failure to exercise the care of a reasonably prudent man which is the familiar definition of negligence."

In the case of Bordonaro v. Senk, 1929, 109 Conn. 428, 147 A. 136, 137, we find the Connecticut court construing the act as follows:

"The framers of the statute undoubtedly used the noun 'heedlessness' in place of the adjective 'heedless' and the word 'or' for 'and.' The phrase 'or caused by his heedlessness or his reckless disregard of the rights of others' meets the legislative intention when it is construed to read, or caused by his

heedless and his reckless disregard of the rights of others.

\* \* \* \* \* \*

"Act or conduct in reckless disregard of the rights of others is improper or wrongful conduct, and constitutes wanton misconduct, evincing a reckless indifference to consequences to the life, or limb, or health, or reputation or property rights of another.

"We define these terms in Menzie v. Kalmonowitz, 107 Conn. 197, at page 199, 139 A. 698, 699: 'Wanton misconduct is more than negligence, more than gross negligence. It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of action.' "

In the case of Grant v. MacLelland, 1929, 109 Conn. 517, 147 A. 138, it was held that liability under the guest act is entirely apart from negligence which cannot be alleged or relied upon in an action thereunder. In Sadinsky v. Coughlin, 1932, 114 Conn. 585, 159 A. 492, it was held that a high degree of negligence was not enough to amount to heedlessness or disregard of the rights of others as is required under the guest statute. The Connecticut court in the case of Shinville v. Hanscom, 1933, 116 Conn. 672, 166 A. 398, held that to furnish a basis of recovery under the guest statute reckless misconduct must have been a substantial factor in bringing about the injuries complained of and that if the defendant had been guilty of such misconduct on other occasions during the same drive which was in no way a cause of the accident it would not justify a recovery. The reckless misconduct must have been the proximate cause of the accident resulting in injury to support a recovery.

In the case of Vanderkruik v. Mitchell, 1934, 118 Conn. 625, 173 A. 900, 903, the facts disclose that defendant drove, without protest from his guest, at a speed of between 45 and 55 miles an hour within the limits of a city and into an intersection where a collision with another automobile entering the same intersection at right angles occurred. Neither driver sounded his horn or gave notice of approach to the intersection. The court held that defendant's motion to set aside a verdict in favor of plaintiff should have been allowed by the trial court and said:

"In short, the evidence discloses that the primary cause of the collision was the thoughtless and careless maintenance of high speed at a point where due care required that it be reduced; but as held, in effect, in the Ascher Case, speed alone does not spell a reckless operation of the car within the meaning of the statute."

In each of the cases of Ascher v. H. E. Friedman, Inc., 1929, 110 Conn. 1, 147 A. 263; Rindge v. Holbrook, 1930, 111 Conn.

72, 149 A. 231; and Maher v. Fahy, 1930, 112 Conn. 76, 151 A. 318, the Supreme Court of Connecticut held that where the evidence in a guest case discloses only negligence on the part of the driver instead of a heedless and reckless disregard of the rights of the guest, a verdict for the guest plaintiff should be set aside by the court.

In the case of Anderson v. Colucci, 1932, 116 Conn. 67, 163 A. 610, 612, the plaintiff, a guest, brought suit under the guest statute against the administrator of the driver of the car. The case was tried before a jury and upon the completion of plaintiff's evidence defendant moved for nonsuit, which the trial court granted. We quote at length from the decision of the court as follows:

"As to the defendant's intestate, Colucci, the jury could reasonably have found from the evidence that he was driving on a smooth concrete road 36 feet wide, well lighted and straight; that there was, just at that time, very little traffic; that he had brilliant headlights which should have shown him this truck in front of him at least as soon as he came within the range required of his lights by law, viz. two hundred feet (General Statutes, § 1598); that no marks on the roadway showed that he had applied his brakes, or that to avoid the collision he swerved from the second lane in which he was proceeding. To drive into this truck under these circumstances would, without explanation, justify the jury in reaching a conclusion that he was negligent, particularly if the jury believed the statement of an eyewitness that the car was being driven at a 'terrific' speed. While this adjective may have little probative value in fixing the miles per hour, it surely connotes immoderate as distinguished from moderate speed under the circumstances, and this is further supported by the fact of the smashing of his motor and the complete demolition of his car, and by the further testimony that the heavy truck was turned about, its body knocked loose and pushed out of place, and other damage done to it.

"We are satisfied that a conclusion that there was negligence on the part of the defendant's intestate, Colucci, would have had a reasonable basis in the evidence.

"But it was necessary to make out a prima facie case of something more than negligence in order to obtain a verdict against this defendant. Since the plaintiff had the legal status of a guest in this car, it was necessary for him to show prima facie that the intestate's conduct was in heedless and reckless disregard of the plaintiff's rights. There is no evidence and no permissible inference that this driver knowingly assumed a risk or was aware

of danger, Potz v. Williams, 113 Conn. 278, 281, 155 A. 211, or that he was warned or requested to do anything different from what he did, Berman v. Berman, 110 Conn. 169, 170, 147 A. 568, Meyer v. Hart, 110 Conn. 244, 245, 147 A. 678, or that he was guilty of more than thoughtlessness, inadvertence, or an error of judgment, Upson v. General Baking Co., 113 Conn. 787, 789, 156 A. 858, Schepp v. Trotter, 115 Conn. 183, 185, 160 A. 869, or anything to justify an inference that he was indifferent to the consequences which might result to his passengers from his conduct, Ascher v. H. E. Friedman, Inc., 110 Conn. 1, 3, 147 A. 263. In short, there is no evidence or permissible inference that he was guilty of wanton or willful misconduct. Bordonaro v. Senk, 109 Conn. 428, 431, 147 A. 136, Grant v. MacLelland, 109 Conn. 517, 520, 521, 147 A. 138.

"The motion for nonsuit was properly granted as to defendant Colucci. * * *"

The New Mexico statute was interpreted by the Supreme Court of Oklahoma in the case of Gill v. Hayes, 188 Okl. 434, 108 P.2d 117, 120. The facts showed that at about 18 miles south of Raton, New Mexico, at a little after midnight, the defendant was operating his automobile at speeds at times up to 80 miles an hour and that on several occasions plaintiff, a guest in the automobile, asked the defendant to slow down. The pavement was wet from rains and at the time of the accident there was a mist in the air. Immediately prior to the accident the defendant entered a curve in the road traveling at approximately 70 miles an hour and applied his brakes, which were not in good working order. The car swerved, left the road and turned over seven times. The trial court sustained a demurrer to plaintiff's evidence and the plaintiff appealed claiming error. The Supreme Court of Oklahoma stated that so far as it was advised the court of last resort of New Mexico had not construed the New Mexico guest statute and it turned to the decisions of the appellate courts of Connecticut for their construction of the statute, which the court said was the first State having a guest statute identical to that of New Mexico. Several Connecticut cases were cited and discussed with approval and the court said:

"Nearly all the courts passing upon this identical statute have held * * that in order to create liability, the acts of the operator causing the accident must be something beyond mere negligence; and something approaching willful or wanton misconduct.

"The only respect in which the attitude of one whose acts are in heedless and reckless disregard of the rights of others is less blameworthy than that of the intentional wrongdoer is that

instead of affirmatively wishing to injure another, he is merely willing to do so.

\* \* \* \* \* \*

"The question presented is whether there was any evidence which, together with all inferences that might reasonably be drawn therefrom, reasonably tended to prove that the accident was intentional on the part of defendant or was caused by his heedlessness or his reckless disregard of the rights of others, and particularly the rights of plaintiff.

\* \* \* \* \* \*

."Measured by the construction of every other court which has construed the statute, we are unwilling to say that the evidence in this case, though sufficient to show negligence in its ordinary sense, was sufficient to show a willingness to inflict injury on plaintiff or any of his other guests."

The New Mexico guest statute was again interpreted by the Kansas City Court of Appeals in the case of Woolf v. Holton, 240 Mo.App. 1123, 224. S.W.2d 861, 866. The suit was brought in Missouri but involved an automobile accident occurring in New Mexico in which plaintiff was injured while riding as a guest in defendant's car. The guest, as plaintiff, recovered judgment in the lower court based upon the verdict of a jury. The defendant appealed, claiming that the trial court should have directed a verdict for the defendant as sought by his motion. The Court of Appeals stated:

"The New Mexico statute is an exact copy of the guest statute of Connecticut, apparently the first to be enacted, 1927, Pub.Acts 1927, c. 308, § 1, since repealed, and when the legislature of New Mexico adopted this statute, they also adopted the construction that the highest courts of Connecticut had placed upon it up to that time. Lee v. Lott, 50 Ga.App. 39, 177 S.E. 92."

The Court of Appeals held that the evidence failed to show that defendant was guilty of heedless and reckless disregard of the rights of others as defined and interpreted by the courts of Connecticut and courts of other states construing identical or similar statutes. In concluding the court said:

"The judgment of the trial court is reversed and it is directed to set aside the judgment for plaintiff and enter one for defendant in accordance with this opinion."

In the case of Lee v. Lott, 50 Ga.App. 39, 177 S.E. 92, the Court of Appeals of Georgia was called upon to construe the South Carolina statute which was identical to that of Connecticut. The accident resulting in injury had occurred in South Carolina but the Georgia court found that the courts of South Carolina had not at

that time construed the statute, so it looked to, cited and followed the decisions of Connecticut in construing and interpreting the South Carolina statute.

In the case of Fly v. Swink, 17 Tenn.App. 627, 69 S.W.2d 902, the Court of Appeals, considering a case that involved an accident occurring in Texas, found that the Texas guest statute had been adopted from Connecticut and it followed the Connecticut court decisions in construing the statute. In this case the Court of Appeals held that the trial court correctly directed a verdict for the defendant on the ground that the plaintiff had not shown by the evidence that the defendant driver was guilty of heedless and reckless disregard of the rights of others and that such conduct was the proximate cause of the accident resulting in injuries to plaintiff.

 Bearing in mind the definitions and interpretations given to the words of the statute, namely, "heedlessness or reckless disregard of the rights of others", as hereinabove discussed, we are convinced that there was no substantial evidence in the present case upon which reasonable persons could base a conclusion that the accident resulting in the injuries to plaintiff was caused by defendant's heedless and reckless disregard of the rights of others and particularly of the rights of plaintiff, or that the acts of defendant showed a wanton and reckless misconduct on his part, which proximately caused the accident,

without regard to consequences to the life or safety of others. The evidence may have established negligence on the part of the defendant which, of course, would not be sufficient to establish liability.

The trial court erred in failing and refusing to grant defendant's motion to set aside the verdict of the jury awarding plaintiff $12,500 and to enter judgment notwithstanding the verdict in favor of defendant Meadows and against the plaintiff Smith, dismissing plaintiff's complaint.

The jury also returned a verdict of $250 in favor of third-party defendant Gomez against defendant Meadows and the court entered judgment notwithstanding the verdict in favor of third-party defendant Gomez against defendant Meadows for $385.-12. Defendant Meadows took no exception to the action of the court in setting aside the verdict for $250 on the counterclaim and entering judgment for $385.12 on the counterclaim in favor of Gomez and against Meadows.

 The defendant appellant contended the court erred in failing and refusing to give to the jury his requested instructions Nos. 11, 12, 14 and 15. A careful examination of each of these four instructions requested by defendant discloses that not one of them correctly states the law as applied to the evidence introduced in this case. Each of such requested instructions being obviously incorrect, we deem it

unnecessary to discuss the instructions or their errors in detail. The court did not commit error in refusing to give them. It is apparent that several of the instructions given by the court were erroneous in the case but the defendant did not properly except or assign error on account thereof. The trial court likewise failed to properly instruct the jury with reference to the issues presented in the case concerning negligence or contributory negligence of the third-party defendant Gomez in parking his automobile on a traveled portion of the highway at night without lights. The trial court gave no instructions to the jury with reference to the statutes of New Mexico regulating and prohibiting parking of motor vehicles upon any part of the traveled portion of the public highways at night without lights or illumination. But, while the trial court was remiss in this regard, defendant Meadows cannot complain here because of his own failure to take proper exceptions or to present and request correct and proper instructions covering such issues.

If Gomez' action in parking his unlighted car on a traveled portion of the highway at night constituted negligence under the circumstances, and such negligence was either the proximate cause of the accident or a proximately contributing cause, then Gomez would not have been entitled to judgment on his counterclaim against defendant Meadows. However, the jury found a verdict in favor of counterclaimant Gomez against defendant Meadows and the court raised the amount of the verdict and granted judgment in the larger amount. Even though we may believe the judgment for $385.12 in favor of Gomez to be unjust still, in view of the state of the record and for the reasons hereinabove stated and there being no assignment of error upon which the judgment in favor of counterclaimant Gomez and against defendant Meadows can be properly reversed by this court, we are obliged to affirm it.

The judgment in favor of plaintiff and against defendant Meadows for $12,500 is reversed and the judgment in favor of cross-claimant Gomez against defendant Meadows is affirmed. The cause is remanded to the district court with instructions to set aside the judgment in favor of plaintiff and against defendant Meadows in the sum of $12,500 and to enter judgment of dismissal against plaintiff and in favor of defendant Meadows. The appellant Meadows and the third-party defendant as counterclaimant (appellee) Gomez shall recover their respective costs to be taxed by the clerk.

It is so ordered.

LUJAN, C. J., and SADLER, McGHEE and COMPTON, JJ., concur.